STATE OF MAINE
CUMBERLAND, ss

SUPERIOR        COURT
CIVIL ACTION
DOCKET NO. CV-19-0073

GEORGE MEYER,

　　　　Plaintiff

v.

ORDER

MAINE DEPARTMENT OF
CORRECTIONS,

　　　　Defendant

REC'D CUMB CLERKS OFC
JAN 17 '20 PM2:53

In this action plaintiff George Meyer alleges that, as a prisoner incarcerated at the Mountain View Correctional Facility, he was injured by airborne sediment during the course of maintenance operations carried out at the facility.

Before the court is a motion for summary judgment by the Department of Corrections based on the contention that, based on the undisputed facts, the Department is entitled to immunity under the Maine Tort Claims Act, 14 M.R.S. § 8101 et seq.

Summary Judgment

Summary judgment should be granted if there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. In considering a motion for summary judgment, the court is required to consider only the portions of the record referred to and the material facts set forth in the parties' Rule 56(h) statements. *E.g., Mahar v. StoneWood Transport,* 2003 ME 63 ¶ 8, 823 A.2d 540. The facts must be considered in the light most favorable to the non-moving party. *Id.* Thus, for purposes of summary judgment, any factual disputes must be

**Plaintiff–Robert Levine, Esq.**
**Defendant–Alisa Ross, AAG**

resolved against the movant. Nevertheless, when the facts offered by a party in opposition to summary judgment would not, if offered at trial, be sufficient to withstand a motion for judgment as a matter of law, summary judgment should be granted. *Kenny v. Department of Human Services*, 1999 ME 158 ¶ 3, 740 A.2d 560.

In this case all of the material facts are undisputed.[1] The parties disagree as to whether Meyer's claim comes within the "public building" exception to immunity under § 8104-A(2) of the Tort Claims Act and whether, if the public building exception applies, the Department is nevertheless immune because the acts complained of are subject to discretionary function immunity under § 8104-B(3) of the Tort Claims Act.[2] These are questions of law. *See Tolliver v. Department of Transportation*, 2008 ME 83 ¶ 16, 948 A.2d 1223.

Public Building

Pursuant to 14 M.R.S. § 8104-A(2), notwithstanding the general principle of sovereign immunity and with certain exceptions not applicable in this case,

> A governmental entity is liable for its negligent acts or omissions in the construction, operation or maintenance of any public building or the appurtenances to any public building.

The Department's contention is that the Mountain View Correctional Facility is not a public building within the meaning of section 8104-A(2).

---

[1] In two instances Meyer has responded to the assertions in the Department's statement of material facts with qualifications, and the Department has responded with qualifications to several of the factual assertions in Mayer's statement of additional material facts. None of the qualifications are material.

[2] In its motion for summary judgment the Department also addressed the exception to immunity set forth on § 8104-A(1)(G) (other machinery and equipment). *See New Orleans Tanker Corp. v. Department of Transportation*, 1999 ME 67 ¶¶ 6, 10-11, 728 A.2d 673. In opposing the Department's motion, Meyer relies solely on the public building exception in § 8104-A(2) and does not rely on § 8104-A(1)(G). Meyer also does not contend that the Department has procured insurance to cover his claim. *See* 14 M.R.S. § 8116.

2

The Law Court has most recently and most comprehensively considered the issue of what constitutes a "public building" in *Rodriguez v. Town of Moose River*, 2007 ME 68 ¶¶ 30-33, 35, 922 A.2d 484. Based on that case, the relevant criteria to be considered include whether a building is accessible to the public, is owned by the government, serves a public purpose, is used to provide services to the public, and is under some degree of governmental control. *Id.* ¶¶ 32-33, 35, citing, *inter alia*, to *Black's Law Dictionary* and *Webster's Third New International*. However, it is not necessarily required that all of these criteria be met. In *Rodriguez* a building was found to constitute a "public building" within the meaning of 14 M.R.S. § 8104-A(2) even though it was privately owned and had not been leased to any governmental entity.

The Department relies primarily on the fact that the Mountain View Correctional Facility is not accessible to the public, except to the extent that visitors are permitted under specified conditions and to a limited degree. On the other hand, it is owned by the Department, is completely controlled by the Department, and serves a public purpose by incarcerating persons found to have committed crimes.

In at least one case the Law Court appears to have agreed that the Maine Correctional Center in Windham constituted a public building although it upheld the trial court's decision that the Department had not been negligent with respect to the maintenance of that building. *Roberts v. State*, 1999 ME 89 ¶ 11, 731 A.2d 855. Based on *Roberts* this court has previously found that bunks welded into county jail cells would qualify as appurtenances to a public building and that negligence in the maintenance of those bunks would therefore fall within the public building exception to sovereign immunity. *Wildes v. Cumberland County*, 2004 Me. Super. LEXIS 202 (Cumberland County, September 10, 2004). Although the issue is not free from doubt given the emphasis in *Rodriguez* on accessibility to the public, the court will adhere to its prior ruling and

3

concludes that the Mountain View Correctional Facility constitutes a "public building" for purposes of 14 M.R.S. § 8104-A(2).

## Discretionary Function

The remaining question is whether the Department is nevertheless immune pursuant to 14 M.R.S. § 8104-B(3), which provides that notwithstanding the waivers of immunity in section 8104-A, governmental entities are not liable for any claim that results from

> Performing or failing to perform a discretionary function or duty, whether or not the discretion is abused . . . .

In this case the record reflects that Meyer's alleged injuries occurred during work that was undertaken to prepare a boiler for an annual inspection and to maintain the operation of other boilers to provide heat and hot water to the facility.[3] Meyer argues that adequate safety precautions were not taken and specifically that safety goggles were not provided to Meyer.[4] The Department argues that Meyer's claim of negligence involves alleged acts or omissions that occurred in the course of the supervision of prisoners and therefore falls within the immunity for discretionary functions in keeping with the Law Court's decision in *Roberts v. State*, 1999 ME 89 ¶ 10.

*Roberts* is one of a number of cases in which the Law Court has utilized a four part test, first announced in *Darling v. AMHI*, 535 A.2d 421, 426 (Me. 1987), to determine whether discretionary function immunity applies:

> 1. Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective?

---

[3] Defendant's Response to Interrogatories ¶ 9, cited in Plaintiff's Statement of Additional Material Facts (SAMF) ¶ 38.

[4] Plaintiff's SAMF ¶¶ 39, 42.

4

2. Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective?

3. Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved?

4. Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Accord, Lawson v. Willis,* 2019 ME 36 ¶ 9, 204 A.3d 133; *Rodriguez,* 2007 ME 68 ¶ 22; *Roberts v. State,* 1999 ME 89 ¶ 8; *Adriance v. Town of Standish,* 687 A.2d 238, 240 (Me. 1996).

The Law Court has also looked beyond the four factor test to consider such factors as whether the action in question was "uniquely governmental" in nature, *Tolliver v. MDOT,* 2008 ME 83 ¶ 17, 948 A.2d 1223, 1229; whether it resembles activities performed by non-governmental actors, *Adriance,* 687 A.2d at 241; and whether or not the action is "operational" in nature. *Rodriguez,* 2007 ME 68 ¶¶ 22-23.

In the court's view one useful method of analysis is to consider whether, as a matter of public policy, the action for which discretionary immunity is sought involves decisions that governmental officials should be allowed to make without considering the possibility of liability. In other words, if the threat of liability could influence a decision maker to avoid taking action that might be in the public interest, then immunity should be available. On the other hand, where the threat of liability would influence decision makers to take safety precautions with no detriment to the public interest, immunity should be less readily available.

Considering the four-factor test and the policies that discretionary immunity is designed to serve, the court concludes that the alleged acts or omissions complained of in this case – negligently failing to take adequate safety precautions for a prisoner engaged in boiler maintenance

5

— are not entitled to discretionary immunity. On this record the acts or omissions in question do not involve the kind of policy decisions that fall within the third *Darling* factor but instead are operational in nature. The Department's actions in maintaining its heating system are not "uniquely governmental" but resemble those of a private building owner or heating contractor.

Nor can the court discern any reason why permitting the claims to go forward could negatively influence governmental decisions that should be made in the public interest. Indeed, it would be in the public interest if the threat of liability provided an incentive for the Department to take adequate safety precautions for prisoners assigned to work crews.

On this issue *Roberts* is distinguishable. The plaintiff in *Roberts* had been ordered to return to his cell after an argument with a correctional officer and alleged that he had reached his hand back when the door did not close smoothly and had been injured when the correctional officer had slammed the door. 1999 ME 89 ¶ 2. The Law Court stressed that the actions in that case involved decisions relating to the security of the correctional institution and its core mission of incarceration:

> The supervision [of inmates] necessarily involves the exercise of judgment by corrections officers, including the discretionary decision of when to order an inmate to his cell. That discretionary decision also includes the shutting of the cell door when the inmate has failed to shut it or the door has failed to shut.

1999 ME 89 ¶ 10.

In *Roberts* the alleged actions complained of involved the uniquely governmental function of locking an inmate in his cell consistent with need to maintain prison security. In the instant case there is nothing uniquely governmental about deciding what safety precautions should be taken for persons engaged in boiler maintenance work. On this record, there is no evidence that the

6

Department's alleged acts or omissions were related to prisoner control or security.[5] Accordingly, the court concludes that Meyer's claims relate to operational decisions as described in *Rodriguez*, 2007 ME 68 ¶ 23, rather than policy decisions entitled to discretionary function immunity. *See Jorgensen v. Department of Transportation*, 2009 ME 42 ¶ 18, 969 A.2d 912.

The entry shall be:

Defendant's motion for summary judgment is denied. The clerk shall incorporate this order in the docket by reference pursuant to Rule 79(a).

Dated: January 17, 2020

Thomas D. Warren
Justice, Superior Court

Entered on the Docket: 01|17|20

---

[5] It is theoretically possible that prison security concerns, not apparent from the summary judgment record, are somehow implicated in this case. If so, the court would be prepared to reconsider the issue of discretionary function immunity at trial.

7