STATE OF MAINE                                    SUPERIOR COURT
KENNEBEC, ss.                                     CIVIL ACTION
                                                  DOCKET NO. CV-17-202


DANIEL LAWSON,                          )
                                        )
            Plaintiff,                  )
                                        )
v.                                      )         **ORDER ON DEFENDANT'S**
                                        )         **MOTION TO DISMISS**
DEBBY WILLIS,                           )
                                        )
            Defendant.                  )


Before the Court is Defendant's Motion to Dismiss. Plaintiff represents himself. Defendant is

represented by Assistant Attorney General Kelly L. Morrell.


I.    Background

Plaintiff has brought claims for slander per se and libel per se against his former supervisor

after being discharged from the Office of the Attorney General. Plaintiff was hired as an

Assistant Attorney General to work in the Child Support Enforcement Division in September

2016. His direct supervisor was Defendant Debby Willis, chief of the Division. Plaintiff contends

that he received generally positive feedback from Defendant during the first six months of his

employment. He alleges that in a February 2017 meeting to review his job performance,

Defendant told Plaintiff that she was satisfied with his performance.

Plaintiff alleges that Defendant's attitude towards him turned hostile shortly thereafter as a

result of an email exchange. Plaintiff contends that he responded to a group email from a

colleague about how to interpret a statute. He alleges that he suggested a different interpretation

1

than that of Defendant and that he did so in a professional manner. According to Plaintiff, Defendant told him that the email bothered her and reprimanded him for sending it. Plaintiff states that he then asked for an explanation of "what harm he had caused and what he had done wrong by sharing his opinion in an open discussion with his colleagues" and Defendant could not provide one.

Plaintiff alleges that Defendant "made him a target of intense and harsh scrutiny" following the email incident. Plaintiff contends that his job performance remained the same but that Defendant became increasingly critical. Plaintiff alleges that in order to damage his reputation and remove him from the Attorney General's office, Defendant made false and defamatory remarks about Plaintiff. Particularly, Plaintiff alleges that in March 2017, Defendant wrote a memo stating that the court had ordered Plaintiff to serve a party and that Plaintiff "had refused to do so." Plaintiff attests that Defendant knew this statement was false because she had seen an email that Plaintiff sent to the deputy chief which ended with "I will do as you direct."

On June 5, 2017, Defendant met with Plaintiff to tell him that, based upon her recommendation, the Attorney General was terminating his employment. Defendant gave Plaintiff a memo on his job performance which stated that Plaintiff had been "rude and arrogant" during his court appearances. Plaintiff contends that this statement was baseless and was made only to ensure Plaintiff's employment was terminated. Plaintiff alleges that following the termination of his employment as an Assistant Attorney General, Defendant was forced to accept lower paying employment. He alleges that he earned a salary of $57,948.80 annually as an Assistant Attorney General and only $48,000.00 in his new employment.

2

## II.    Standard of Review

A motion to dismiss tests the legal sufficiency of the complaint. *Bean v. Cummings*, 2008 ME 18, ¶ 7, 939 A.2d 676. When reviewing a motion to dismiss, the Court views "the complaint in the light most favorable to the plaintiff, and treat the material allegations of the complaint as admitted." *Dragomir v. Spring Harbor Hosp.*, 2009 ME 51, ¶ 15, 970 A.2d 310. Dismissal is only appropriate "when it appears beyond doubt that a plaintiff is entitled to no relief under any set of facts that he might prove in support of his claim." *Id.*

## III.    Discussion

Defendant moves the Court to Dismiss Plaintiff's claims on the basis that the claims are barred by discretionary immunity. Discretionary immunity as found in the Maine Tort Claims Act, provides that government entities and government employees are immune from claims resulting from: "performing or failing to perform a discretionary function or duty, whether or not the discretion is abused . . . ." 14 M.R.S. §§ 8104-B(3), 8111(1)(C); *see Norton v. Hall*, 2003 ME 118, ¶ 6, 834 A.2d 928.

In *Quintal v. Hallowell*, the plaintiff had been employed by the city of Hallowell as Code Enforcement Officer, Building Inspector, and Plumbing Inspector. *Quintal v. City of Hallowell*, 2008 ME 155, ¶ 2, 956 A.2d 88. After taking comp time with the permission of the City Clerk, but not that of the City Manager, as was provided for in plaintiff's union contract when the City Manager was unavailable, the City Manager became displeased with the plaintiff. *Id.* ¶¶ 3-4. The City Manager then took a number of steps, such as an unprecedented evaluation in which he found the plaintiff's performance minimally satisfactory, that undermined the plaintiff's employment. *Id.* ¶¶ 6-7. The plaintiff's employment was terminated. *Id.* ¶ 12. Upon a review of

plaintiff's complaint, including a tort claim for interference with a contractual relationship, the

Superior Court dismissed plaintiff's action finding that the City Manager had discretionary

immunity. *Id.* ¶ 16. The Law Court upheld the trial court decision. *Id.* ¶ 35. The Law Court set

out the four-factor test for determining that discretionary immunity applies:

> (1) Does the challenged act, omission, or decision necessarily involve a basic governmental policy, program or objective? (2) Is the questioned act, omission, or decision essential to the realization or accomplishment of that policy, program, or objective as opposed to one which would not change the course or direction of the policy, program, or objective? (3) Does the act, omission, or decision require the exercise of basic policy evaluation, judgment, and expertise on the part of the governmental agency involved? (4) Does the governmental agency involved possess the requisite constitutional, statutory, or lawful authority and duty to do or make the challenged act, omission, or decision?

*Id.* ¶ 34, (citing *Roberts v. State of Maine*, 1999 ME 89, P8, 731 A.2d 855, 857;

quoting *Adriance v. Town of Standish*, 687 A.2d 238, 240 (Me. 1996))). The Law Court applied

the test to the facts in *Quintal* and held as follows:

> (1) it is the municipal government's objective to have employees that properly and efficiently perform the tasks assigned to them; (2) reprimanding an employee and recommending his termination is essential to effectuate that objective; (3) determining whether an employee is properly and efficiently discharging his duties requires, at least in part, the exercise of judgment; and (4) the City Manager is the appropriate person to make recommendations regarding the Code Enforcement Officer's job performance. Rhodes's actions were within his discretion, and even if he abused that discretion, immunity still applies to those actions. 14 M.R.S. § 8111(1)(C).

*Id.* ¶ 35. The Law Court further held that the City Manager was entitled to absolute immunity in

discretionary functions and that the bad faith exception did not apply. *Id.* ¶ 36.

Plaintiff argues that this case is distinguishable from *Quintal* citing to *Carroll v. City of

Portland*, 1999 ME 131, 736 A.2d 279. In *Carroll*, a community resource officer for the

Scarborough Police Department was sued for defamation after accidentally misreporting the

plaintiff's name to a television program that published information about criminal suspects to aid

4

in their arrest. *Id.* ¶ 2. The officer transcribed the names of people with outstanding warrants for their arrest for the television program and accidentally included the plaintiff's name, which was subsequently broadcast on the program. *Id.* The trial court granted the defendant's motion for summary judgment, finding that the officer had discretionary immunity. *Id.* ¶ 3. The Law Court overturned the trial court's decision, finding that the act of transcribing names was ministerial and therefor did not require discretion. *Id.* ¶ 9. The Law Court held that discretionary immunity did not apply in that case. *Id.*

Plaintiff concedes that Defendant's act of recommending termination of his employment to the Attorney General is discretionary but asks the Court to distinguish between any recommendations given to the Attorney General and reports concerning his performance provided to the Attorney General. *See* (Pl's Opp to Def.'s Mot. to Dismiss, 4.) ("Unlike the code enforcement officer in *Quintal*, the basis of Plaintiff's complaint is not that Defendant wrongly recommended his termination to the Attorney General. To the contrary, Plaintiff alleges that the Defendant committed defamation while doing something that entails no discretion whatsoever – collecting and relating specific information about Plaintiff's work as an Assistant Attorney General.") Plaintiff argues that the acts of gathering and reporting information about an employee's performance is ministerial not discretionary, therefore the Court should apply *Carroll* rather than *Quintal*.

The Court notes that prior discretionary immunity caselaw generally determines the applicability of discretionary immunity on a motion for summary judgment after the facts have been further laid out rather than upon a motion to dismiss. In this case, the Court would be inclined to allow further development of the facts concerning Defendant's authority and her role in making employment recommendations. However, Plaintiff does not seek such further

development on those issues. Plaintiff has conceded Defendant's discretionary authority to offer employment recommendations to the Attorney General and has narrowed the issue before the Court to whether Defendant's discretionary authority extends to investigation and reporting of employment performance information. The Court finds that Defendant's acts of gathering and reporting information concerning Plaintiff's performance to the Attorney General were discretionary. The Court finds that 1) hiring and firing decisions are at the core of the Attorney General's ability to run an orderly and effective office, 2) that investigation of such decisions is imperative to the policy of running an effective office, 3) the decision of what information to gather and report requires the individual investigating to rely upon his or her expertise and understanding of the office, and 4) that the Defendant had the authority to gather and report information. The Court finds that the current case has more similarities with *Quintal* than with *Carroll*. The Court grants Defendant's Motion to Dismiss based upon the Court's finding that Defendant had discretionary immunity to investigate and report on Plaintiff's employment performance.

IV.     Conclusion

The Court grants Defendant's Motion to Dismiss.

The Clerk is directed to incorporate this Order into the docket by reference in accordance with M.R. Civ. P. 79(a).

DATE:   7/23/18

Michaela Murphy
Justice, Superior Court

6